UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DAVID J. HOBBS,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security,<br><br>　　　　　　Defendant. | CASE NO.　C08-5364BHS-KLS<br><br>REPORT AND<br>RECOMMENDATION<br><br>Noted for April 10, 2009 |

Plaintiff, David J. Hobbs, has brought this matter for judicial review of the denial of his applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is 45 years old.[1] Tr. 45. He has a general equivalency degree and past work experience as a painter operator, laborer and welder helper. Tr. 27, 74, 79, 82.

On January 27, 2004, plaintiff filed applications for disability insurance and SSI benefits, alleging

---
[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

disability as of December 16, 2003, due to open heart surgery, chest pain, an inability to move his arms and hands, and diabetes. Tr. 18, 68, 73, 353. His applications were denied initially and on reconsideration. Tr. 18, 45-47, 53, 56, 60, 366-67, 373-75, 379. A hearing was held before an administrative law judge ("ALJ") on October 27, 2006, at which plaintiff, represented by counsel, appeared and testified. Tr. 383-415.

On May 15, 2007, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of coronary heart disease, status post myocardial infarction and two vessel bypass surgery, and ischemic heart disease;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings");

(4) after step three but before step four, plaintiff had the residual functional capacity to perform sedentary work, with certain other non-exertional limitations;

(5) at step four, plaintiff was unable to perform his past relevant work; and

(6) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 18-28. Plaintiff's request for review was denied by the Appeals Council on April 9, 2008, making the ALJ's decision the Commissioner's final decision. Tr.6; 20 C.F.R. § 404.981, § 416.1481.

On June 6, 2008, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1-#3). On August 8, 2008, the administrative record was filed with the Court. (Dkt. #12). Plaintiff argues that decision should be reversed and remanded for further administrative proceedings, because the ALJ failed to properly address the opinion of Michael Thomas, M.D., his treating orthopedic physician, and to properly consider plaintiff's upper extremity impairments and find them to be severe.[3] For the

---

[2]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

[3]In his opening brief, plaintiff also asserted the ALJ erred in failing to properly consider his cardiac impairment, and whether it met or equaled the criteria of Listing 4.04C. Plaintiff, however, subsequently agreed to withdraw that issue, and thus it no longer is before the Court for its consideration.

REPORT AND RECOMMENDATION
Page - 2

reasons set forth below, the undersigned disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that the ALJ's decision be affirmed. Although plaintiff requests oral argument in this matter, the undersigned finds such argument to be unnecessary here.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." Id. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85-28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that his "impairments or their symptoms affect [his] ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. Smolen, 80 F.3d at 1290.

As noted above, the ALJ found plaintiff's coronary heart disease, status post myocardial infarction and two vessel bypass surgery, and ischemic heart disease to be severe impairments. Plaintiff argues the

ALJ erred in not also finding he had a severe upper extremity impairment. While the record does contain evidence that plaintiff did have issues with his upper extremities at times, that evidence fails to show any significant work-related limitations stemming therefrom that have lasted, or could be expected to last, for a period of at least 12 months.

In mid-December 2003, plaintiff was found to have full range of motion in all extremities upon admission to the hospital for complaints of chest pain. Tr. 184. In late January 2004, plaintiff's arms were noted to be "still weak," following the performance of bypass surgery the previous month. Tr. 119. In late May 2004, it was noted that plaintiff continued to complain "of some limitations" in the "use of his arms, particularly raising" them "above shoulder level." Tr. 198. Around the same time, however, he once again was found to have normal range of motion in all of his joints, along with normal power and sensation, and while there was a slight decrease in grip strength on the right, there was no muscle atrophy or pathological reflexes. Tr. 193-94.

A physical residual functional capacity assessment form was completed by Robert N. Barnes, M.D., in late June 2004, and affirmed by P.S. Rowley, M.D., in late August 2004, in which plaintiff was found to have no manipulative limitations (Tr. 202), and to be unlimited in his ability to push and or pull with both his upper and lower extremities (Tr. 200). In late October 2004, plaintiff's motor strength was full and his sensation was normal. Tr. 207. At step two, although the ALJ must take into account a claimant's pain and other symptoms (see 20 C.F.R. § 404.1529), the severity determination here is made solely on the basis of the objective medical evidence in the record:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. <u>At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.</u> If this assessment shows the individual to have the physical and mental ability(ies) necessary to perform such activities, no evaluation of past work (or of age, education, work experience) is needed. Rather, it is reasonable to conclude, based on the minimal impact of the impairment(s), that the individual is capable of engaging in SGA [substantial gainful activity].

SSR 85-28, 1985 WL 56856 *4 (emphasis added). Accordingly, although plaintiff was noted to have some arm weakness in late January 2004, and a slight decrease in right grip strength in late May 2004, the record fails to contain any objective medical evidence that plaintiff had significant work-related limitations

lasting for the required period of 12 months at this time. Even when plaintiff's late May 2004 complaints of being limited in the use of his arms are factored into the equation – though, as just noted, the ALJ did not have to consider them at this step of the sequential disability evaluation process – again, an insufficient showing of lasting work-related restrictions has been made here.

The record does contain medical and other evidence of upper extremity-related issues beginning in 2006, as well, but, once more, that evidence is not sufficient to support plaintiff's assertion that he suffers from a severe upper extremity impairment. On March 9, 2006, plaintiff reported having numbness, pain and a lack of strength in his left hand, "to the point where it" was "hard to get his pants buttoned." Tr. 263. On examination at the time, plaintiff did exhibit "significantly weaker grip strength in the left hand than in the right hand," though tests to indicate the presence of carpal tunnel syndrome were negative. Id. Plaintiff was diagnosed with "[l]eft arm numbness and weakness." Tr. 264.

Four days later, on March 13, 2006, plaintiff again complained of numbness, tingling and weakness in his left hand. Tr. 255. The physical examination findings, however, were fairly normal:

> Sensation to pinprick is slightly decreased in the left 4th and 5th fingers. Motor examinations are grades 4+/5 in the upper limbs except the left thumb. The muscle tone is within normal range. Coordination is within normal range. The deep tendon reflexes are equal and symmetrical in the upper limbs. Tinel's signs are negative on percussion of the median nerve across the carpal tunnel.

Id. Plaintiff thus was found to have only a "mild degree of entrapment neuropathy." Tr. 256. In addition, while plaintiff also was found to have numbness, he was diagnosed as having only mild carpal tunnel syndrome as well. Id. In late March 2006, while diagnoses of carpal tunnel syndrome and ulnar entrapment were given, it was noted that plaintiff's left hand strength was "still adequate." Tr. 262.

In early April 2006, plaintiff reported to Michael Thomas, M.D., having noticed a loss of grip and pinch strength in his left hand, and described an achy pain in his left thumb and two of his left fingers as well. Tr. 266. Dr. Thomas found plaintiff had reduced range of motion in his left shoulder, but full and non-tender range of motion in his left elbow. Tr. 267. In terms of his left hand, examination thereof for the most part was fairly unremarkable, with only some loss of grip strength and reported diminished sensation. Id. Dr. Thomas diagnosed plaintiff with mild left carpal tunnel syndrome and "[l]eft elbow cubital tunnel syndrome/compression neuropathy across the elbow." Id.

Both plaintiff and Dr. Thomas reported unchanged symptoms and findings in early May 2006 (Tr.

265), and substantially similar clinical findings were produced in late June 2006, as well (Tr. 249). Later that month, plaintiff underwent left carpal tunnel release surgery performed by Dr. Thomas, who opined after the surgery that plaintiff "should be able to resume lighter hand activities" within twelve days, "and any more desired strenuous hand activities by 4-6 weeks postoperatively." Tr. 251. In early July plaintiff reported "no significant further improvement in his hand or upper extremity symptoms, although on further questioning, the achy pain in the base of his thumb" seemed "to be improved." Tr.. 343.

In early August 2006, only mild tenderness was noted on examination, and plaintiff's left hand grip strength was noted to be only somewhat diminished, as was sensation. Tr. 342. Dr. Thomas found plaintiff to be "stable and improved" six weeks status post left carpal tunnel release, although his left elbow ulnar compression neuropathy was unchanged. Id. In late September 2006, plaintiff reported having continued left hand pain, but did "not note any loss of grip strength." Tr. 341. Physical examination findings revealed only mild to moderate tenderness, "slightly improved" hand strength and intact sensation. Id. The carpal tunnel syndrome was noted to be "stable, but with incomplete hand rehab," and his left ulnar compression neuropathyy at the elbow was found to be "improved". Id. In addition, Dr. Thomas stated that he thought "ultimately" plaintiff's hand would "not settle down until sufficient time" had "passed and his hand scar and operative site" had matured. Id.

The last progress note in the record from Dr. Thomas is dated November 7, 2006, at which time plaintiff, although also noting continued weak left grip and thumb strength, reported having "regained hand strength and motion on his own." Tr. 340. Plaintiff reported still having "intermittent numbness" in his left fingers as well, but stated that his discomfort was "not severe." Id. Dr. Thomas found his hand strength continued "to be improved," with intact sensation. Id. He assessed plaintiff's left carpal tunnel syndrome as being "stable and slightly improved," and his left ulnar compression nueropathy at the elbow as being "improved and minimally symptomatic." Id. Dr. Thomas also opined that:

> . . . Activity-wise, he may continue activities as tolerated. He may find that repetitive hand or elbow activity is not comfortable, but as long as he does not develop more specific hand symptomatology, I would not put any undue restrictions on his activity.

Id. Lastly, the record contains a medical source statement from William P. Brennan, M.D., dated February 2, 2007, in which he stated he saw plaintiff every six months, and opined that plaintiff would be able to use his hands repetitively for work activity on a frequent basis. Tr. 348, 351.

Plaintiff argues the above evidence establishes that he has medically determinable impairments consisting of left carpal tunnel syndrome and ulnar compression neuropathy. While the undersigned agrees the record does establish the existence of these impairments, as discussed above, plaintiff also must prove those impairments have more than a minimal effect on his ability to perform work-related activities. That has not been done in this case. Plaintiff points to the statement by Dr. Thomas in early November 2006, that repetitive hand or elbow activity could be problematic for him. But this is not what Dr. Thomas said. Rather, he said plaintiff "may" find such activity "is not comfortable." Tr. 340. This does not mean though that he felt plaintiff actually would be limited in his engagement thereof.

Indeed, as noted above, Dr. Thomas went on to state that "as long as" plaintiff did "not develop more specific hand symptomatology," he "would not put any undue restrictions on his activity." Id. Also as noted above, the record fails to show any increase in plaintiff's hand symptoms. Plaintiff asserts that he testified at the hearing that he had difficulty with his hands, but cites to no specific portion of the hearing transcript to support this assertion. While plaintiff did testify that from January to July 2004, after he had been hospitalized, his "arms weren't working right." Tr. 401. But, as discussed above, this does not constitute objective medical evidence upon which a step two finding must be based, and, in any event, did not last for the required twelve month durational requirement.

Plaintiff, furthermore, did also testify that he had tendonitis in his left hand and nerve compression in his left elbow, had numbness, tingling, pain, cramps, and weakness in his left hand, underwent carpal tunnel surgery, and wore a splint at night. Tr. 402-06. However, when asked what was keeping him from working, plaintiff did not testify that it was because of problems with his left hand or elbow, or with any other aspect of his upper extremities. See Tr. 408. Again, though, even if he had so testified, as discussed above, at step two only objective medical evidence is considered in determining an impairment's severity. Plaintiff does argue the ALJ failed to evaluate the early November 2006 opinion of Dr. Thomas, but this argument fails, as the ALJ did discuss the medical evidence in the record concerning plaintiff's left upper extremity issues – including the treatment and progress notes from Dr. Thomas – and found that evidence did not support his allegations of limitations resulting therefrom. See Tr. 23-26.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions

of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

Plaintiff, as noted above, argues the ALJ erred in evaluating the medical evidence in the record in regard to his upper extremity impairments. As explained above, however, not only did the ALJ address that evidence in the body of his decision, his decision to not find plaintiff's upper extremity impairments to be severe is supported by the substantial evidence in the record, including the clinical findings Dr. Thomas himself provided. Indeed, plaintiff's own self-reports and testimony fail to support a finding that his upper extremity limitations, to the extent there is evidence of more than *de minimis* such limitations in the record, have been sufficiently significant in terms of both extent and duration. Accordingly, the undersigned finds the ALJ did not err in his step two analysis.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ properly concluded plaintiff was not disabled, and should affirm the ALJ's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **April 10, 2009**, as noted in the caption.

DATED this 16th day of March, 2008.

Karen L. Strombom
United States Magistrate Judge